
FILED
9/20/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | CASE NUMBER: 1:23-cr-00497 |
|---|---|
| v. | |
| RAUL RODRIGUEZ JR. | |

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 19, 2023, at Berwyn, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a), and | did knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance |
| Title 18, United States Code, Section 922(g)(1) | did, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possess in and affecting interstate commerce a firearm, namely, a loaded Smith & Wesson M&P 9 Shield 9mm pistol bearing serial number LFN2404, which firearm traveled in interstate commerce prior to the defendant's possession of the firearm |

This criminal complaint is based upon these facts:

　X　 Continued on the attached sheet.

_JAMES HANSEN_
JAMES HANSEN
Task Force Officer
Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 20, 2023

_Judge's signature_

City and state: Chicago, Illinois       JEFFREY T. GILBERT, U.S. Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, JAMES HANSEN, being duly sworn, state as follows:

1. I am a Task Force Officer with Homeland Security Investigations (HSI) and have been so employed for approximately four years. I am currently assigned to U.S. Department of Homeland Security, HSI, Chicago Financial Investigation Group. My current responsibilities include the investigation of narcotics trafficking offenses. As part of my duties, I investigate criminal violations relating to narcotics trafficking, money laundering, and money transmitting offenses, including violations of Title 21, United States Code, Sections 841 and 846; and Title 18, United States Code, Sections 1956(h) and 1960.

2. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances and the further laundering of proceeds of narcotics smuggling and trafficking. I have received training in narcotics investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in investigations involving violations of narcotics laws. I have also participated in investigations that have led to the issuance of warrants involving violations of narcotic laws.

3. This affidavit is submitted in support of a criminal complaint alleging that RAUL RODRIGUEZ JR. has violated Title 21, United States Code, Section 841(a), and Title 18, United States Code, Section 922(g)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging RODRIGUEZ JR. with possession with the intent to distribute and distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, and with possession of a firearm by a convicted felon, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents who have knowledge of the events and circumstances described herein, law enforcement records, interviews of witnesses, my training and experience, and the training and experience of other law enforcement agents.

I. **FACTS SUPPORTING PROBABLE CAUSE**

A. **Summary**

5. After police stopped a vehicle due to its dark window tinting, the police discovered the driver—RAUL RODRIGUEZ JR.—was driving on a suspended license and arrested him. RODRIGUEZ JR. had behaved in a nervous manner during the stop, and the police requested a canine to sniff the vehicle. A canine unit arrived

shortly thereafter and alerted to the front driver's side door panel and the trunk for the presence of narcotics. The police searched the trunk and found a large amount of U.S. Currency within a black backpack.

6. Later that day, law enforcement approached 2447 S. Central Park Avenue in Chicago (hereinafter, "Central Residence"). Individual B—who identified himself as a relative of RODRIGUEZ JR. and the owner of the Central Residence—provided law enforcement with consent to search the residence. After Individual B and another resident informed investigators that RODRIGUEZ JR. lived on the third floor of the Central Residence, investigators searched the third floor. There, investigators discovered multiple firearms in the sole third-floor bedroom and approximately 930 grams of a substance that field tested as cocaine in the kitchen. One of the firearms, a Smith & Wesson M&P 9 Shield 9mm pistol bearing serial number LFN2404, was found on a bookshelf/nightstand next to the bed. A wallet containing RODRIGUEZ JR.'s state identification card was found on the same bookshelf/nightstand. In 2013, RODRIGUEZ JR. was convicted of a felony offense, aggravated assault, in Cook County Circuit Court, and sentenced to 5 years in prison.

**B.    The Traffic Stop**

7. According to Berwyn Police Department officers, on or about September 19, 2023, at approximately 2:00 p.m., Berwyn Police Department officers were on patrol in the vicinity of 16th Street and Ridgeland Avenue in Berwyn, Illinois. At approximately 2:00 p.m., according to Berwyn Police Department officers, officers observed a gray Honda Accord bearing Illinois license plate number DT55886 driving

in front of them. According to the Berwyn Police Department officers, they conducted a traffic stop of the Accord because its dark window tint appeared to violate state law (625 ILCS 5/12-503)(a-5)(1)).

8. According to Berwyn Police Department officers, after stopping the Accord, officers radioed dispatch to check the Accord's registration. According to the police dispatch, the registration for the Accord was suspended. According to a law enforcement database, Illinois license plate number DT55886 is registered to RODRIGUEZ JR. at the Central Residence.

9. According to Berwyn Police Department officers, officers then approached the vehicle and observed a man—later identified as RAUL RODRIGUEZ JR.—in the driver's seat. According to the officers, RODRIGUEZ JR.'s hands were trembling and he appeared to be visibly nervous based on his sporadic movements. Officers also reported observing a woman—later identified as RODRIGUEZ JR.'s girlfriend, Individual A—in the front passenger's seat.[1]

10. According to representatives from the Berwyn Police Department, after officers requested that RODRIGUEZ JR. produce his driver's license, RODRIGUEZ JR. stated that he did not have his license with him. RODRIGUEZ JR. then searched his pants pockets and center console but was unable to produce a driver's license. Officers then asked RODRIGUEZ JR. for his name and date of birth, to which he responded "RAUL RODRIGUEZ" and provided his date of birth. According to Berwyn

---

[1] According to a law enforcement database, Individual A has a pending misdemeanor traffic offense in Cook County for "DUI/Drugs" with an alleged violation of 625 ILCS 5.0/11-501-A-5.

4

police officers, RODRIGUEZ JR. reported to the police that both his driver's license and license plates were suspended.

11. According to the Berwyn Police Department officers, officers then asked RODRIGUEZ JR. to step out of the Accord; he complied. Officers asked RODRIGUEZ JR. if there were any weapons in his vehicle or on his person. According to the police, he denied having any weapons. According to representatives from the Berwyn Police Department, officers then searched RODRIGUEZ JR.'s name in an Illinois state database, which stated that RODRIGUEZ JR.'s driver's license was suspended. Officers then arrested RODRIGUEZ JR. for driving with a suspended driver's license.

12. According to the police, after he had been arrested, RODRIGUEZ JR. asked the police if he could call someone to arrange for his child to be picked up from school. The police then reported they spoke with Individual A, who identified herself as RODRIGUEZ JR.'s girlfriend. According to the Berwyn police, Individual A reported that RODRIGUEZ JR.'s parents—who lived at the Central Residence—would pick up RODRIGUEZ JR.'s child.

13. According to Berwyn police officers, because RODRIGUEZ JR. had appeared to be nervous during the traffic stop, officers requested that a canine officer be sent to conduct a canine sniff of RODRIGUEZ JR.'s vehicle. According to the police, a canine officer arrived approximately 10 minutes later and had the dog sniff the exterior of the Accord for narcotics.[2]

---

[2] According to the Berwyn Police Department, this canine was last certified by Full Circle Canine in approximately July 2023.

14. According to Berwyn police officers, the canine indicated for the presence of narcotics in the front driver's side door panel and the trunk. According to the police, the police then opened the Accord's trunk and the canine indicated for the presence of narcotics on a black backpack. The canine officer then opened the black backpack and observed it contained a plastic bag filled with U.S. Currency that had the number "39" on the exterior.[3]

### C. The Interviews at the Police Station.

15. According to Berwyn police officers, officers transported RODRIGUEZ JR., Individual A, and the Honda Accord to the Berwyn Police Department. The Berwyn Police Department then contacted HSI investigators.

16. According to HSI investigators, officers advised RODRIGUEZ JR. of his *Miranda* rights, and RODRIGUEZ JR. acknowledged that he understood them. When asked, RODRIGUEZ JR. informed the police that his address was the Central Residence. When officers asked RODRIGUEZ JR. whether he had an apartment number at the Central Residence, RODRIGUEZ JR. responded that he did not, and that the Central Residence was a "house." When officers asked RODRIGUEZ JR. about the money found in the trunk of the Honda Accord, RODRIGUEZ JR. declined to answer further questions and invoked his right to counsel.

---

[3] Law enforcement has not yet definitively counted the amount of cash recovered from the backpack. However, based on the approximate weight of the recovered bag and an estimate of the number of rolls of cash, my best, nondefinitive estimate of the dollar amount recovered is approximately $39,000 to $40,000.

17. According to HSI investigators, officers also advised Individual A of her *Miranda* rights, and Individual A acknowledged that she understood them. Individual A stated that RODRIGUEZ JR. resides at the Central Residence. When asked, Individual A informed the police that her address was in Melrose Park, Illinois, but that she stayed with RODRIGUEZ JR. at the Central Residence a few nights per week. When officers asked Individual A about the money found in the trunk of the Honda Accord, Individual A denied that any of it belonged to her and declined to answer further questions.

### D. The Search of the Central Residence

18. According to HSI investigators, on or about September 19, 2023, at approximately 2:20 p.m., HSI investigators approached the Central Residence. After law enforcement knocked on the door for approximately five to ten minutes, a middle-aged man—Individual B—answered the door. Individual B identified himself as a relative of RODRIGUEZ JR.

19. According to HSI investigators, investigators first spoke to Individual B in Spanish, and Individual B responded in English. HSI investigators then explained that RODRIGUEZ JR. had been the subject of a traffic stop, and that law enforcement had found contraband in RODRIGUEZ JR.'s vehicle. According to HSI investigators, investigators requested Individual B's permission to search the residence, and

Individual B verbally stated that investigators could enter and search the home for contraband.[4]

20. According to HSI investigators, Individual B led investigators upstairs, told investigators that he owned the entire house, and that he had access to every area of the house. HSI investigators reported that Individual B told investigators they could search the entire property. According to HSI investigators, Individual B's property was a multi-unit, three-level property, with one unit on each floor. HSI investigators reported the Central Residence was a "three-flat" that could be utilized as three separate units, but that based upon investigators' observations of the movements of residents (such as Individual C moving between units as discussed in paragraph 23) and the defendant's description of the Central Residence as a "house," they understood to be used as a single, multi-generational family residence.[5]

21. According to HSI investigators, Individuals C, D, and E, and two minors were also present during the search. Each identified himself/herself as a relative of RODRIGUEZ JR. According to Individuals B, D, and E, Individuals B, D, and E, lived on the second floor. According to HSI investigators, Individual C never

---

[4] According to HSI investigators, Individual B later signed a written form formalizing his consent to search the residence.

[5] According to HSI investigators, when investigators arrived to the Central Residence, the only door that was locked was the front door to the second floor unit, which is where Individuals B, D, and E stated they lived, and where investigators believed Individual C lived based upon: (1) Individual C having keys to that unit; and (2) Individual C spending the vast majority of the time during the search in that unit. HSI investigators also noted that while they went to the back stairwell in the rear of the building, the doors to the units on the first, second, and third floors were all unlocked.

definitively stated that he lived on the second floor, but spent the majority of his time in the second floor unit during the search.

22. According to HSI investigators, investigators began by searching the second floor. At that time, Individual B and Individual D, a male relative of RODRIGUEZ JR., informed investigators that RODRIGUEZ JR. did not live on the second floor. Individuals B and D then led investigators down to the first floor, and told investigators that RODRIGUEZ JR. spent "a lot of his time" on the first floor and Individual D stated RODRIGUEZ JR. slept on the couch when down on the first floor.

23. According to HSI investigators, investigators then searched the first floor. HSI investigators reported that the first floor appeared to have been designed to be its own unit, but noted that parts of the first floor—to include the kitchen—were under renovation at the time of the search. During the search of the first floor, law enforcement discovered a removable piece of flooring in the first-floor laundry room. When investigators removed this piece of flooring, they observed a black plastic bag in the dirt beneath the residence. HSI investigators reported that they opened the bag and found the following within it: a Ziploc bag containing, among other things, baggies containing white powder; a baggie containing pills; and a baggie containing brown powder.

24. According to HSI investigators, another middle-aged male—Individual C—then walked down to the first floor. Individual C also identified himself as a relative of RODRIGUEZ JR.'s. According to HSI investigators, investigators asked

9

Individual C if RODRIGUEZ JR. slept on the first floor. Individual C reported that RODRIGUEZ JR. did not, and that he instead slept on the third floor (attic).

25. According to HSI investigators, investigators then climbed the rear stairwell of the residence to the third floor. There, according to the investigators, law enforcement found a hinged door that was closed, but neither latched nor locked. After the investigators pushed open the door, they began a search of the third floor.

26. According to HSI investigators, investigators searched the kitchen on the east end of the third floor. After investigators opened one kitchen cabinet, they recovered a Ziploc baggie containing a white powdery substance (the "Opened Vacuum Sealed Bag") and a scale. After opening a second kitchen cabinet directly beneath the first, they recovered a brick-shaped object containing a white powdery substance that had been wrapped in plastic and dipped in wax.

27. According to HSI investigators, investigators then searched the sole bedroom on the third floor. During the search of the bedroom, according to HSI investigators, law enforcement observed men's clothing that appeared to be consistent in size with RODRIGUEZ JR., women's clothing, and children's toys.

28. According to HSI investigators, while searching the bedroom, investigators observed a black pistol—later identified as a loaded Smith & Wesson M&P 9 Shield 9mm pistol bearing serial number LFN2404—in plain view on a bookshelf/nightstand next to the bed. In addition, according to investigators, investigators found a wallet containing an Illinois identification card for RAUL RODRIGUEZ JR.—containing RODRIGUEZ JR.'s name, photograph, and date of

birth—on the same bookshelf/nightstand next to the bed. That identification card listed RODRIGUEZ JR.'s address as the Central Residence.

29. According to HSI investigators, investigators also looked under the mattress in the bedroom. There, according to investigators, they found a black and gold rifle with a loaded magazine, a silver revolver, an extended pistol magazine, and a Ziploc bag containing ammunition. A photograph provided by HSI investigators is below:[6]



30. According to HSI investigators, before leaving the Central Residence, investigators asked Individual B if the suspected narcotics found on the first and

---

[6] This photograph includes all of the firearms investigators found on the third floor, including the Smith & Wesson that had been found on the bookshelf/nightstand. As such, this photograph is for illustrative purposes only and does not necessarily depict the firearms in the exact manner they were found.

11

third floors, and the firearms found on the third floor, were his. According to HSI investigators, Individual B reported that none of the narcotics or firearms belonged to Individual B, and Individual B claimed he provided investigators with consent to search the Central Residence because he did not believe they would find any contraband or firearms. At that point, according to investigators, Individual B reported that RODRIGUEZ JR. primarily stayed on the third floor, occasionally with Individual A.

31. According to HSI investigators, investigators field tested the Opened Vacuum Sealed Bag and the brick-like object that had been dipped in wax, both of which had been found in the third floor kitchen of RODRIGUEZ JR.'s residence. According to HSI investigators, the field test for each object tested positive for the presence of cocaine, and the two objects had a combined weight of approximately 930 grams.

32. According to HSI investigators, investigators also field tested the materials found within the Ziploc bag in the first floor. According to HSI investigators, the field test for the materials within the Ziploc bag tested positive for the presence of MDMA, and had a weight of approximately 15.8 grams.

33. According to the website for Smith & Wesson, Smith & Wesson firearms are manufactured outside of the state of Illinois, in Springfield, Massachusetts. Therefore, the Smith & Wesson firearm that RODRIGUEZ JR. possessed traveled in interstate commerce prior to RODRIGUEZ JR.'s possession of it.

34. According to record from the Clerk of the Circuit Court of Cook County, Illinois, RAUL RODRIGUEZ JR., with an address of Central Residence and RODRIGUEZ JR.'s date of birth, was convicted of aggravated battery in Cook County on January 16, 2013. RODRIGUEZ JR. was sentenced to 5 years in prison.

## II. CONCLUSION

35. Based on the information set forth in this affidavit, there is probable cause to believe that, on or about September 19, 2023, in the Northern District of Illinois, Eastern Division, RAUL RODRIGUEZ JR. did possess with intent to distribute and distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

36. Based on the information set forth in this affidavit, there is also probable cause to believe that, on or about September 19, 2023, in the Northern District of Illinois, Eastern Division, RAUL RODRIGUEZ JR. did, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possess in and affecting interstate commerce a firearm, namely, a loaded Smith & Wesson M&P 9 Shield 9mm pistol bearing serial number LFN2404, which firearm traveled in interstate commerce prior to the defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

FURTHER AFFIANT SAYETH NOT.

JAMES HANSEN
Task Force Officer
Homeland Security Investigations (HSI)

SWORN TO AND AFFIRMED by telephone September 20, 2023.

Honorable JEFFREY T. GILBERT
United States Magistrate Judge